## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FREE SPEECH FOR PEOPLE, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 19-1722 (APM) |
| | ) | |
| v. | ) | |
| | ) | REPLY IN SUPPORT OF |
| FEDERAL ELECTION COMMISSION, | ) | MOTION TO DISMISS |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT FEDERAL ELECTION COMMISSION'S REPLY
## IN SUPPORT OF ITS MOTION TO DISMISS

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

Tanya Senanayake (D.C. Bar No. 1006218)
Attorney
tsenanayake@fec.gov

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463
(202) 694-1650

October 25, 2019

## TABLE OF CONTENTS

                                           **Page**

ARGUMENT ................................................................................................................................1

I.  FSFP HAS NOT ESTABLISHED THAT IT HAS SUFFERED
    INFORMATIONAL INJURY ................................................................................2

    A.  FSFP Has Not Alleged That It Suffers Any Harm From a
       Deprivation of Information ...........................................................................3

       1.  FSFP Makes No Allegations About Particularized Harm
          As Required in This Circuit ..............................................................3

       2.  FSFP Fails to Show How the Denial of the Information
          That It Seeks Is Causing FSFP to Suffer in Ways
          Contemplated by Congress ................................................................7

    B.  FSFP Fails to Establish That It Has Been Deprived of
       Information That Must Be Disclosed Under FECA .....................................9

    C.  FSFP Is Seeking a Legal Determination That Does Not
       Constitute Informational Injury ..................................................................10

II.  FSFP HAS NOT CARRIED ITS BURDEN TO DEMONSTRATE
    ORGANIZATIONAL INJURY .............................................................................12

III.  FSFP HAS FAILED TO STATE A CLAIM UNDER THE APA ..........................13

CONCLUSION ..........................................................................................................................14

# TABLE OF AUTHORITIES

*Cases*                                                                                                                                                                                   *Page*

*Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Entm't, Inc.*,
   659 F.3d 13 (D.C. Cir. 2011) .................................................................................. 12

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) ........................................................... 2

*Brink v. Cont'l Ins. Co.*, 787 F.3d 1120 (D.C. Cir. 2015) ............................................ 14

*Campaign Legal Center v. FEC*, 245 F. Supp. 3d 119 (D.D.C. 2017) ........................... 5, 6, 11, 12

*Citizens for Responsibility and Ethics in Wash. v. FEC*,
   475 F.3d 337 (D.C. Cir. 2007) .................................................................................. 8

*Citizens for Responsibility and Ethics in Wash. v. FEC*,
   267 F. Supp. 3d 50 (D.D.C. 2017) ..................................................................... 4, 6, 7

*Cohen v. United States*, 650 F.3d 717 (D.C. Cir. 2011) .............................................. 13

*Common Cause v. FEC*, 108 F.3d 413 (D.C. Cir. 1997) ............................................. 7, 8, 9, 11

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
   878 F.3d 371, 378 (D.C. Cir. 2017), *cert. denied*, 139 S.Ct. 791 (2019) ........................ 3, 12

*FEC v. Akins*, 524 U.S. 11 (1998) ........................................................................... 3, 4, 6, 7, 8

*Friends of Animals v. Jewell*, 824 F.3d 1033 (D.C. Cir. 2016) ..................................... 4

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
   460 F.3d 13 (D.C. Cir. 2006) .................................................................................. 13

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ............................................. 12

*In re Nat'l Cong. Club v. FEC*, Nos. 84-5701, 84-5719, 1984 WL 148396
   (D.C. Cir. Oct. 24, 1984) ........................................................................................... 9

*Judicial Watch, Inc. v. FEC*, 293 F. Supp. 2d 41 (D.D.C. 2003) .................................. 8

*Kean for Congress Comm. v. FEC*, 398 F. Supp. 2d 26 (D.D.C. 2005) ........................ 5

*Maib v. FDIC*, 771 F. Supp. 2d 14 (D.D.C. 2011) ...................................................... 13

*Moore v. D.C.*, 445 F. App'x 365 (D.C. Cir. 2011) .................................................... 13

*Nader v. FEC*, 725 F.3d 226 (D.C. Cir. 2013) ........................................................... 7, 8, 9

*Owner-Operator Indep. Drivers Ass'n, Inc. v. United States Dep't of Transport.*, 879 F.3d 339 (D.C. Cir. 2018) .................................................................. 5

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agriculture*, 797 F.3d 1087 (D.C. Cir. 2015) ............................................................................... 12

*Shays v. FEC,* 528 F.3d 914 (D.C. Cir. 2008) ............................................................ 5, 8

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ............................................................. 9

*Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006) ......................................................... 13

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................................ 9

*Wertheimer v. FEC*, 268 F.3d 1070 (D.C. Cir. 2001) .................................................... 8

*Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614 (D.C. Cir. 2006) ...................... 4

**Statutes**

5 U.S.C. § 702 ............................................................................................................... 13

**Miscellaneous**

Fed. R. Civ. P. 15(a)(2) ................................................................................................. 14

LCvR 15.1 ..................................................................................................................... 14

**ARGUMENT**

The Federal Election Commission ("FEC" or "Commission") demonstrated in its initial brief that plaintiff Free Speech For People's ("FSFP") challenge to the Commission's handling of its administrative complaint under the Federal Election Campaign Act ("FECA") should be dismissed for lack of jurisdiction and, alternatively, in part for failure to state a claim. FSFP lacks standing because it is seeking to compel the FEC to apply the law against others, which does not present a legally cognizable injury. (FEC's Mem. in Supp. of Mot. to Dismiss at 9-13 (Docket No. 7) ("FEC Mem.").) The Commission also showed that FSFP has not suffered informational injury because it seeks a legal determination that the payment at the center of FSFP's administrative complaint is a campaign contribution and expenditure and, to the extent that it does seek information, FSFP fails to show this information would be useful to voting. (FEC Mem. at 13-20.)

In its response, FSFP relies solely on a theory of informational injury to support its standing. (Pl.'s Mem. in Opp'n to FEC's Mot. to Dismiss at 2, 6-12 (Docket No. 10) ("Opp'n").) But FSFP does not meet the standard for informational injury because it still has not alleged that it lacks information required to be disclosed under FECA or that it has suffered any harm that Congress sought to prevent in enacting FECA. Rather than supplement its complaint to allege facts sufficient to meet the standard for informational injury, FSFP rewrites this standard, seeking to expand the scope of informational injury far beyond that recognized in this Circuit and in ways that violate longstanding principles of Article III standing. FSFP essentially argues that it enjoys standing by default when claiming informational injury, and that it is the defendant's burden to show why plaintiff's claim is doubtful. But cases in this Circuit, even if not always consistent about the contours of informational injury doctrine, provide no support for

1

FSFP's formulation of the standard and its attempt to shift its burden to the Commission. The burden lies with plaintiffs to make allegations that provide a sufficient basis for standing even in informational injury cases. This FSFP has not done.

Because FSFP has not carried its burden to show informational injury or organizational standing, this Court should dismiss the complaint for lack of standing. Furthermore, the Administrative Procedure Act ("APA") does not function as an alternative pathway for jurisdiction in this Court with regard to claims brought under FECA. Accordingly, to the extent any of FSFP's claims rely on the APA, they should be dismissed for failure to state a claim upon which relief can be granted.

## I. FSFP HAS NOT ESTABLISHED THAT IT HAS SUFFERED INFORMATIONAL INJURY

In its initial brief, the Commission showed that FSFP's hoped-for legal determination would not redress any informational injury and that, to the extent that it does seek information, FSFP fails to allege that such information would be useful in voting. (FEC Mem. at 13-18.) In response, FSFP claims that it must only show that FECA requires disclosure of the information sought and "there is no reason to doubt [plaintiff's] claim that the information would help them." (Opp'n at 7 (internal quotations and citations omitted); *id*. at 13, 14-15.) But this is a misstatement of the relevant standard in the D.C. Circuit, which FSFP ultimately fails to meet. FSFP is asking this Court to expand the reach of informational injury beyond the scope recognized in this Circuit.

The burden remains with FSFP to establish this Court's subject matter jurisdiction, including showing that it has constitutional standing. (FEC Mem. at 7 (citing *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).) To be sure, an injury in fact may arise where a "plaintiff

fails to obtain information which must be publicly disclosed pursuant to a statute." (Opp'n at 6 (quoting *FEC v. Akins*, 524 U.S. 11, 21 (1998)).) But to "carry its burden of demonstrating a sufficiently concrete and particularized informational injury, the plaintiff must show that (1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017), *cert. denied*, 139 S.Ct. 791 (2019). FSFP fails to meet this standard.

### A. FSFP Has Not Alleged That It Suffers Any Harm From a Deprivation of Information

FSFP has still not sufficiently alleged informational injury because it has not shown that "it suffers, by being denied access to [] information, the type of harm Congress sought to prevent by requiring disclosure." *Elec. Privacy Info. Ctr.*, 878 F.3d at 378 (internal quotation marks omitted). First, FSFP makes no allegations about any particularized harm that it would suffer as required in this Circuit. And because FSFP has not provided any explanation as to how this alleged deprivation of information has affected or will affect its activities, it fails to show that it suffers the "type of harm" that Congress sought to prevent when enacting the disclosure provisions of FECA.

#### 1. FSFP Makes No Allegations About Particularized Harm As Required in This Circuit

Rather than attempting to allege particularized, concrete adverse effects from allegedly being denied the information it seeks, FSFP instead claims that it "must demonstrate only that there is no reason to doubt their claim that the information would help them." (Opp'n at 13 (internal quotations and citations omitted)). But FSFP's formulation is derived from dicta in

*Akins* and is not the informational injury standard in this Circuit. In *Akins*, plaintiffs were a group of voters who alleged that not having access to AIPAC disclosure reports (as they claimed FECA mandated) affected their evaluation of candidates in elections and their ability to determine the effect of AIPAC's financial lobbying in any given election. *Akins*, 524 U.S. at 21. The *Akins* Court observed: "There is no reason to doubt [plaintiffs'] claim that the information would help them (and others to whom they would communicate it) to evaluate candidates for public office, especially candidates who received assistance from AIPAC, and to evaluate the role that AIPAC's financial assistance might play in a specific election," thus finding that "[r]espondents' injury consequently seems concrete and particular." *Akins*, 524 U.S. at 21; *Citizens for Responsibility and Ethics in Wash. ("CREW") v. FEC*, 267 F. Supp. 3d 50, 53 (D.D.C. 2017) (*"CREW/Murray Energy"*) ("Plaintiffs have a cognizable informational injury if the statute they seek to enforce (or have the FEC enforce in the first instance) entitles them to receive information that they intend to use in a particularized way." (citing *Akins*, 524 U.S. at 21; *Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 618 (D.C. Cir. 2006))). Importantly, the *Akins* Court looked to the plaintiffs' allegations of the specific, particularized harm that they claimed they would suffer if deprived of the information they sought — and then found "no reason to doubt" these allegations. FSFP has made no such allegations here.

The D.C. Circuit has reiterated this approach. FSFP cites to *Friends of Animals v. Jewell*, 824 F.3d 1033 (D.C. Cir. 2016), to support its view that nothing more is required of plaintiffs to assert informational injury than that the information sought is required to be disclosed under the statute and there is no reason to doubt plaintiff's claim that such information would be helpful. (Opp'n at 7.) But the D.C. Circuit has rejected this very approach, dismissing plaintiffs who "read *Jewell* to support their claim that Congress has broad latitude to define new injuries," and

4

recognizing that "the opinion in [*Jewell*] emphasizes the narrow scope of informational injuries and makes clear that plaintiffs *must suffer real harm* to support standing." *Owner-Operator Indep. Drivers Ass'n, Inc. v. United States Dep't of Transport.*, 879 F.3d 339, 344 (D.C. Cir. 2018) (emphasis added).

FSFP errs when it argues that the "denial of information about campaign financing under [FECA] can constitute an informational injury" *alone*, without any allegation as to the particularized harm that plaintiff would suffer as a result of the denial. (Opp'n at 6-7.) The cases to which FSFP cites do not support its contention. For instance, in *Shays v. FEC*, Representative Shays challenged Commission regulations as contrary to the Bipartisan Campaign Reform Act (BCRA). 528 F.3d 914, 916-17 (D.C. Cir. 2008). Representative Shays had alleged that BCRA entitled him to "information about who is funding presidential candidates' campaigns," and that the challenged regulations did not require presidential candidates to report as contributions what Representative Shays believed BCRA required. *Id*. at 923. As FSFP notes (Opp'n at 7), the court found that the denial of such information constituted injury in fact—but the court based this finding on its observation that the injury was "concrete and particular," as required under *Akins*, because the information would help Representative Shays to evaluate federal candidates and outside funding sources in a specific election, *Shays*, 528 F.3d at 923. With the broad-based regulation at issue there in place, the court found, there would be spenders in presidential races whose identities Shays would never learn. *Id.* Not so in the enforcement action FSFP seeks here, where FSFP has already identified the spender and the amounts at issue.

FSFP also cites to *Campaign Legal Center v. FEC*, 245 F. Supp. 3d 119 (D.D.C. 2017), and *Kean for Congress Comm. v. FEC*, 398 F. Supp. 2d 26 (D.D.C. 2005), for its contention that

it need not allege any particularized harm beyond the denial of information that it believes is required under FECA. (Opp'n at 7.) The court in *Campaign Legal Center* principally relied on *Friends of Animals v. Jewell* in its interpretation of what is required for informational injury. *Campaign Legal Ctr.*, 245 F. Supp. 3d at 124-25. As previously described, the D.C. Circuit subsequently limited the reach of the *Jewell* case and dismissed the notion that it allowed for standing in the absence of allegations as to concrete injury. *See supra* pp. 4-5. In the same way, the D.C. Circuit's clarification of *Jewell* means that the holding in *Kean for Congress Committee v. FEC* on which FSFP relies lacks ongoing vitality as applied to this case.

Consistent with the D.C. Circuit's clarification of the informational injury standard, another court in this Circuit noted that "plaintiffs lack standing because they have not pleaded facts indicating how they would use [the] information in a way that is concrete and particularized to them." *CREW/Murray Energy*, 267 F. Supp. 3d at 54. The Court determined that, "[i]n *Akins*, it was critical to the Supreme Court's analysis of the concrete nature of the harm that the complainants there planned to use the information they would receive to evaluate candidates." *Id*. at 54–55 (citing *Akins*, 524 U.S. at 21, 24–25). The court faulted plaintiff for failing to "allege what [plaintiff] would use [the] information for in this case in particular [or] explain how such information about the contributors . . . would help plaintiff[] evaluate candidates or causes." *CREW/Murray Energy*, 267 F. Supp. 3d at 54–55.

FSFP is therefore wrong when it claims that "if informational standing is established, that is sufficient" and that "it is not FSFP's burden at this stage to specify specific programmatic activities or resources that have been harmed." (Opp'n at 14-15.) FSFP never specifies what "programmatic activities" would be affected in any particularized manner, such as how it intends to use the information it seeks and how the alleged deprivation of information frustrated any

6

such ventures: FSFP alleges only that it "needs [the information it seeks] for its programmatic activities" (Opp'n at 2) and that the information "would be of substantial value to FSFP in determining and implementing its programmatic activities" (Opp'n at 9).[1]

Consistent with the demands of this Circuit and longstanding Article III principles, allegations as to particularized harm are required, and FSFP cannot escape its burden to demonstrate standing even in the context of informational injury. *See supra* p. 2. Here, allowing FSFP to create informational injury without any specification as to how it would be harmed if it were denied the information that it seeks would not only be inconsistent with both Supreme Court and D.C. Circuit precedent but would impermissibly expand the scope of informational injury to any person who has taken part in FECA's administrative process and effectively nullify Article III standing.

## 2. FSFP Fails to Show How the Denial of the Information That It Seeks Is Causing FSFP to Suffer in Ways Contemplated by Congress

FSFP has not provided the Court with allegations that would allow an inquiry into whether the particularized harm that FSFP may suffer is one that Congress sought to prevent in enacting FECA—even when invited to do so in response to the FEC's motion to dismiss. *See supra* pp. 6-7. Yet the D.C. Circuit recognized that "[t]he Supreme Court's ruling in *Akins* and

---

[1] In its complaint, FSFP does allege that "[b]ecause of the lack of an FEC determination as to the role of Mr. Trump and/or the Trump Campaign, FSFP has not had the full opportunity to disseminate such information to its supporters and the public, and has not had the full opportunity to act on the matter." (Pl.'s Compl. for Declaratory and Injunctive Relief ("Compl.") ¶ 25.) But however much FSFP may desire to publicize that Trump or the Trump Campaign violated the law, "such an interest in knowing or publicizing that the law was violated is akin to claiming injury to the interest in seeing the law obeyed, which simply does not present an Article III case or controversy." *CREW/Murray Energy*, 267 F. Supp. 3d at 54–55 (citing *Common Cause v. FEC*, 108 F.3d 413, 418 (D.C. Cir. 1997); *Nader v. FEC*, 725 F.3d 226, 230 (D.C. Cir. 2013); *Akins*, 524 U.S. at 24).

our ruling in *Shays* establish that litigants who claim a right to information allege the type of concrete injury needed for standing to bring a FECA claim *if the disclosure they seek is related to their informed participation in the political process*." *Nader v. FEC*, 725 F.3d 226, 230 (D.C. Cir. 2013) (citing *Akins,* 524 U.S. at 21; *Shays,* 528 F.3d at 923) (emphasis added).[2] In that case, plaintiff alleged that "a large number of lawyers and law firms made undisclosed, in-kind contributions of legal services to the efforts of the John Kerry campaign to keep [plaintiff's] name off the ballot in numerous states" and "ask[ed] the FEC to compel information from participants in the ballot contests in the hope of showing that they violated the prohibitions on undisclosed 'contributions' and 'expenditures'" in FECA. *Nader*, 725 F.3d at 230. The D.C. Circuit found, however, that "[b]ecause this amounts to seeking disclosure to promote law enforcement, Nader asserts an injury that is not sufficiently concrete to confer standing." *Id.* (citing *CREW v. FEC,* 475 F.3d 337, 341 (D.C. Cir. 2007); *Wertheimer v. FEC,* 268 F.3d 1070, 1074 (D.C. Cir. 2001); *Common Cause v. FEC,* 108 F.3d 413, 418 (D.C. Cir. 1997)). The touchstone of this analysis was that the plaintiff was not "seek[ing] information to facilitate his informed participation in the political process" but was instead "seek[ing] to force the FEC to

---

[2] FSFP incorrectly argues that *Shays*, 528 F.3d at 914, overruled two cases to which the FEC referred in its opening brief, *Judicial Watch, Inc. v. FEC*, 293 F. Supp. 2d 41 (D.D.C. 2003), and *Common Cause*, 108 F.3d at 413, to underscore the point that plaintiffs in similar cases must allege some type of harm for an informational injury showing. (*See* Opp'n at 11-12). But, as is evident from the D.C. Circuit's reference to *Shays* in *Nader v. FEC*, 725 F.3d 226, 230 (D.C. Cir. 2013), there was no such overruling. The D.C. Circuit clarified that an informational injury claim can proceed only "if the disclosure [plaintiffs] seek is related to [plaintiffs'] informed participation in the political process," an inquiry that FSFP frustrates by not making any allegations as to the effects of the alleged agency delay. *See supra* pp. 6-7; FEC Mem. at 17-19. As the D.C. Circuit has already made clear, cases such as *Nader* and *Common Cause* are consistent with *Shays*.

Furthermore, stating that "*Shays* should control" (Opp'n at 11), FSFP reiterates its contention that no allegations of particularized harm are required in the informational injury context. But as explained above, the D.C. Circuit has made explicit that plaintiffs asserting informational injury must suffer real harm to support standing. *See supra* pp. 3-5.

"'get the bad guys.'" *Nader*, 725 F.3d at 230 (citing *Common Cause,* 108 F.3d at 418). In light of plaintiff's burden to establish standing, the absence of any allegation that shows FSFP seeks information related to its "participation in the political process" proves fatal to its attempt to claim standing through informational injury.

> B.  **FSFP Fails to Establish That It Has Been Deprived of Information That Must Be Disclosed Under FECA**

FSFP fails to meet the standard for informational injury in this Circuit for the additional reason that it has not alleged that it is seeking information required to be disclosed under FECA.[3] FSFP repeatedly states that it seeks information about "whether (and how) Trump and/or the Trump Campaign were involved in the unlawful transaction." (Opp'n at 1; *id*. at 2.) FSFP states that it wants the "complete factual picture" as to "whether Mr. Cohen's actions were (1) on behalf of the Trump Campaign, and/or (2) in consultation with Trump himself." (Opp'n at 8.)

---

[3] FSFP also argues that it has been deprived of a "procedural right" under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), because it lacks confirmation that Trump and the Trump Campaign were involved with the payment alleged in its administrative complaint. (Opp'n at 12.) However, "[i]t is not sufficient for standing for a plaintiff to 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" *Spokeo*, 136 S. Ct. at 1549 (internal quotation and citation omitted). FSFP has not alleged any concrete harm. *See supra* pp. 6-7. Furthermore, to the extent that FSFP relies on *Warth v. Seldin*, 422 U.S. 490 (1975), to argue that Congress can create a statutory right to sue in the absence of a judicially cognizable injury (Opp'n at 6), *Spokeo* explicitly rejected this view: "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." 136 S. Ct. 1547-48 (internal quotation marks omitted).

Finally, to the extent that FSFP argues that the FEC's alleged delay has created a procedural right that confers standing (Opp'n at 12 ("FECA granted a procedural right to FSFP . . . .")), FECA contains no provision imposing on the Commission any set time period in which to take specific steps or to complete the processing of an administrative complaint. *See, e.g.*, *In re Nat'l Cong. Club v. FEC*, Nos. 84-5701, 84-5719, 1984 WL 148396, at *1 (D.C. Cir. Oct. 24, 1984) (per curiam). The statutory 120-day period after which an administrative complainant may file suit is a jurisdictional threshold, not a timetable for resolution of the complaint. *Id.* Therefore, FSFP has no procedural right to bring a section 30109 claim.

9

FSFP also argues that, "if in fact (as an FEC investigation could determine) the Trump Campaign (and perhaps Trump himself, as its agent) actively directed or facilitated the payment, then that information would be of substantial value to FSFP in determining and implementing its programmatic activities." (Opp'n at 9.) And in its complaint, FSFP alleged that "[a]n FEC investigation and determination of Mr. Trump and the Trump Campaign's role in [American Media, Inc.]'s payment . . . is essential to clarifying the nature of Mr. Trump's and/or the Trump Campaign's involvement." (Pls.' Compl. for Declaratory and Injunctive Relief ("Compl.") ¶ 24 (Docket No. 1); *see* Opp'n at 4.)

But FECA merely requires disclosure related to the amount, source, date, and purpose of contributions to, and expenditures by, federal committees (Compl. ¶ 11), and FSFP fails to show how "the complete factual picture" of any involvement by Trump or the Trump Campaign in payments to Karen McDougal (Opp'n at 9) is connected to information that FECA actually requires to be disclosed. And the statute does not require disclosure of whether Mr. Cohen's actions were on behalf of Trump or the Trump Campaign. It is plaintiff's burden to establish standing with the requisite allegations and to explain why the information that it seeks is required to be disclosed under the statute. *See supra* pp. 2-3. By failing to link the reporting required by statute with the information about the precise contours of participation by Trump and his campaign that it seeks, FSFP does not meet its burden here.

### C. FSFP Is Seeking a Legal Determination That Does Not Constitute Informational Injury

Additionally, as the Commission argued in its initial brief, FSFP cannot rely on informational injury for standing because what it seeks is for the Commission to make a legal determination. (FEC Mem. at 9-13.) FSFP is seeking the determination that the payment was a

10

campaign contribution and expenditure— it is "simply the fact that a violation of FECA has occurred." *Common Cause*, 108 F.3d at 417. Ultimately, "[t]o hold that a plaintiff can establish injury in fact merely by alleging that he has been deprived of the knowledge as to whether a violation of the law has occurred would be tantamount to recognizing a justiciable interest in the enforcement of the law." *Id*. at 418.

In response, FSFP likens this matter to *Campaign Legal Center v. FEC*. (Opp'n at 9.) But in that case, the three administrative complaints for which the court found that the plaintiff had standing involved persons who were not named as respondents in the administrative complaints but who were publicized in the media as being part of the alleged transactions, and who the Commission's Office of General Counsel had named in its reports and recommendations to the Commission. *Campaign Legal Ctr.*, 245 F. Supp. 3d at 126-27. The presence of these additional, previously unknown actors led the court to conclude that the Commission, and therefore the plaintiffs, could not know the facts about the underlying transactions. *Id*. Here, FSFP states that it sought to have the Commission "investigate six separate potential violations of FECA by four separate respondents"—American Media, Inc., the Trump Campaign, Trump, and Michael Cohen. (Opp'n at 1, 3.) Unlike in the three administrative complaints allowed to move forward in *Campaign Legal Center*, FSFP has made no allegations as to unknown or uncertain payors in the transaction about which it complains. Even if the FEC were to investigate plaintiff's allegations and agree with FSFP that the Trump Campaign should have reported this payment as an in-kind contribution from AMI, FSFP would not learn any new factual information that is required to be disclosed. (*See* FEC Mem. at 14-16.)

## II. FSFP HAS NOT CARRIED ITS BURDEN TO DEMONSTRATE ORGANIZATIONAL INJURY

FSFP has failed to sufficiently allege organizational standing. The D.C. Circuit has recognized that "an organization may establish Article III standing if it can show that the defendant's actions cause a 'concrete and demonstrable injury to the organization's activities' that is 'more than simply a setback to the organization's abstract social interests.'" *Elec. Privacy Info. Ctr.*, 878 F.3d at 378 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011)). This Circuit recognizes two limitations on the scope of *Havens* organizational standing: "[T]he plaintiff must show that the defendant's 'action or omission to act injured the organization's interest,' . . . [and] that it 'used its resources to counteract that harm.'" *Elec. Privacy Info. Ctr.*, 878 F.3d at 378 (quoting *People for the Ethical Treatment of Animals v. U.S. Dep't of Agriculture*, 797 F.3d 1087, 1094 (D.C. Cir. 2015) (internal quotation and brackets omitted)).

FSFP has shown neither here and instead claims it has no burden to make this showing. *See supra* pp. 6-7; Opp'n at 13, 14. In fact, FSFP attempts to use *Campaign Legal Center v. FEC* to support its contention that it does not need to make such allegations, but there (as FSFP notes) the court observed that "plaintiffs . . . have proposed valid uses, related to their organizational missions, for the information that they seek." (Opp'n at 13, 14 (quoting *Campaign Legal Ctr.*, 245 F. Supp. 3d at 128–29)). Yet FSFP has entirely failed to make any such allegations here—allegations as to its intended uses of the information it seeks, or how this information is directly related to its organizational mission. FSFP has thus failed to sufficiently allege organizational standing.

## III. FSFP HAS FAILED TO STATE A CLAIM UNDER THE APA

To the extent that plaintiffs' challenge arises under the APA, it must be dismissed because FECA provides the exclusive vehicle for judicial review. No claim separate from FSFP's FECA claim exists here because FECA provides an adequate and exclusive judicial review mechanism. (FEC Mem. at 22-26.) FSFP does not contest this but rather claims that the Court need not reach this issue (Opp'n at 3 n.1.), thus conceding the Commission's point. *See Moore v. D.C.*, 445 F. App'x 365, 366 (D.C. Cir. 2011) (per curiam) (finding argument waived where "[t]here was no mention of it in [plaintiff's] complaint or in [plaintiff's] response to the motion to dismiss"); *Maib v. FDIC*, 771 F. Supp. 2d 14, 20 (D.D.C. 2011) ("The plaintiffs do not address this argument in their opposition to the motion to dismiss, and therefore have waived any opposition or have conceded the issue.").

Importantly, while FSFP claims that it cited the APA for subject matter jurisdiction (Opp'n at 3 n. 1), "the APA grants a cause of action rather than subject matter jurisdiction." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 n. 4 (D.C. Cir. 2006); *Cohen v. United States*, 650 F.3d 717, 723 (D.C. Cir. 2011) (acknowledging that the APA "is not an independent source of jurisdiction"); *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) ("[T]he APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." (citation omitted)). Plaintiffs specifically cite to 5 U.S.C. § 702 (Compl. ¶ 4), and though § 702 "waives the Government's immunity, it preserves 'other limitations on judicial review' and does not 'confer [] authority to grant relief if any other statute . . . expressly or impliedly forbids the relief which is sought.'" *Cohen*, 650 F.3d at 724 (quoting 5 U.S.C. § 702).

13

The portions of plaintiff's complaint that purport to rely on the APA or seek relief beyond what is permitted in section 30109(a)(8) thus fail to state a claim and should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiff's complaint for lack of subject matter jurisdiction and, in the alternative, in part for failure to state a claim.[4]

Respectfully submitted,

| | |
|---|---|
| Lisa J. Stevenson (D.C. Bar No. 457628) | /s/ Tanya Senanayake |
| Acting General Counsel | Tanya Senanayake (D.C. Bar No. 1006218) |
| lstevenson@fec.gov | Attorney |
| | tsenanayake@fec.gov |
| Kevin Deeley | |
| Associate General Counsel | COUNSEL FOR DEFENDANT |
| kdeeley@fec.gov | FEDERAL ELECTION COMMISSION |
| | 1050 First Street NE |
| | Washington, DC 20463 |
| | (202) 694-1650 |
| | |
| | October 25, 2019 |

---

[4] FSFP seeks leave to amend its complaint if the Court finds it deficient. (Opp'n at 15.) This request is improperly presented and completely unsupported. In the case to which FSFP cites, the D.C. Circuit "remand[ed] for the district court to reconsider and explain its decision to deny leave to amend" on the grounds that the district court provided no explanation for its denial. *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1129 (D.C. Cir. 2015).

FSFP's request should be made by motion "accompanied by an original of the proposed pleading as amended." LCvR 15.1. FSFP's original complaint should have contained information sufficient to support its standing, and it has filed an opposition to this motion arguing numerous standing theories. Federal Rule 15(a)(2) states that a Court should only grant a request to amend a complaint at this stage of the litigation if "justice so requires," and FSFP has provided no justification as to why it should be permitted to try again to meet its standing burden. This is particularly true given that FSFP's request does not even try to explain how the jurisdictional defects in its original complaint could be remedied.