UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREE SPEECH FOR PEOPLE, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Case No. 19-cv-1722 (APM) <br> ) |
| FEDERAL ELECTION COMMISSION, | ) <br> ) |
| Defendant. | ) <br> ) |

**MEMORANDUM OPINION**

**I.**      **INTRODUCTION**

Plaintiff Free Speech for People ("Plaintiff") challenges the Federal Election Commission's ("FEC" or "Commission") failure to act on an administrative complaint that it filed before the agency. Initially filed on February 16, 2018, and twice amended thereafter, Plaintiff's administrative complaint alleges that American Media, Inc., Donald J. Trump for President, Inc., Donald J. Trump, and Michael Cohen violated the Federal Election Campaign Act by arranging for, and not reporting, the payment of $150,000 to Karen McDougal for the purpose of influencing the 2016 presidential election. The Commission has yet to act on Plaintiff's complaint.

Plaintiff now contends that the FEC's failure to act on the administrative complaint within the statutorily mandated 120 days of its filing is contrary to law, and that this court must compel the FEC to act. The FEC moves to dismiss for lack of standing. The court agrees that Plaintiff lacks standing and grants the FEC's motion to dismiss.

## II. BACKGROUND

### A. Federal Election Campaign Act

The Federal Election Campaign Act ("FECA") permits any person to file a signed, sworn administrative complaint with the FEC alleging a violation of the Act. 52 U.S.C. § 30109(a)(1); 11 C.F.R. § 111.4. The FEC must notify the respondents named in the administrative complaint, who are afforded 15 days to answer. 52 U.S.C. § 30109(a)(1); 11 C.F.R. §§ 111.5–111.6. Following receipt of a response, if one is made, the General Counsel of the FEC "may recommend to the Commission whether or not it should find reason to believe that a person has committed, or is about to commit, a violation of statutes or regulations over which the Commission has jurisdiction," 11 C.F.R. § 111.7(a), or the General Counsel "may recommend that the Commission find that there is no reason to believe that a violation has been committed or is about to be committed, or that the Commission otherwise dismiss a complaint," *id.* § 111.7(b). If, after reviewing the complaint and response and any other information obtained, at least four members of the Commission determine that there is a "reason to believe that a person has committed, or is about to commit, a violation" of FECA, the Commission "shall make an investigation of [the] alleged violation, which may include a field investigation or audit, in accordance with the provisions of [section 30109]." 52 U.S.C. § 30109(a)(2); *see also* 11. C.F.R. § 111.10. If the Commission makes a reason-to-believe finding, it must notify the respondent of the finding and its basis, though not the complainant. *See* 11 C.F.R. § 111.9(a). Only if the Commission makes a no-reason-to-believe finding, or otherwise terminates the proceedings at this stage, must it notify both the respondent and the complainant. *Id.* § 111.9(b).

At the conclusion of an investigation, the General Counsel must "prepare a brief setting forth his or her position on the factual and legal issues of the case and containing a recommendation

on whether or not the Commission should find probable cause to believe that a violation has occurred or is about to occur." *Id.* § 111.16(a); *see also* 52 U.S.C. § 30109(a)(3) (requiring the General Counsel to file a "brief stating the position of the general counsel on the legal and factual issues of the case"). The respondent is then given the opportunity to address the recommendation, 11 C.F.R. § 111.16(c), and if, after receiving such a response, the General Counsel persists in its recommendation, *id.* § 111.16(d), the Commission must determine whether "there is probable cause to believe that a respondent has violated a statute or regulation over which the Commission has jurisdiction." *Id.* § 111.17(a). Four members of the Commission must agree on a probable-cause finding. *Id.* Upon a finding of probable cause, the "General Counsel shall attempt to correct or prevent the violation by informal methods of conference conciliation and persuasion, and shall attempt to reach a tentative conciliation agreement with the respondent." *Id.* § 111.18(a); *see also* 52 U.S.C. § 30109(a)(4)(A)(i). If the Commission cannot reach a conciliation agreement with the respondent within the statutorily mandated time period,[1] the Commission may authorize the filing of a civil action. 11 C.F.R. § 111.19; *see also* 52 U.S.C. § 30109(a)(6). If, on the other hand, the Commission finds no probable cause to believe or otherwise terminates the proceedings, the General Counsel must notify both the complainant and the respondent. 11 C.F.R. § 111.17(b).

FECA itself mandates only limited public disclosure of enforcement matters. The Act provides that the FEC must make public (1) any "conciliation agreement [] agreed upon by the Commission and the respondent" and (2) any "determination that a person has not violated" FECA or any other federal election laws. 52 U.S.C. § 30109(a)(4)(B)(ii); *see also Doe, 1 v. FEC*, 920 F.3d 866, 869–70 (D.C. Cir. 2019). Agency policy, however, demands more expansive public

---

[1] The general statutory period to reach a conciliation agreement is 90 days, unless the probable cause finding occurs within 45 days of an election, in which case the time to reach an agreement is reduced to 15 days. 52 U.S.C. § 30109(a)(4)(A)(i)–(ii).

3

disclosures. *See generally* Disclosure of Certain Documents in Enforcement and Other Matters, 81 Fed. Reg. 50,702, 50,702–03 (Aug. 2, 2016). Among other things, the FEC makes public General Counsel reports and memoranda making recommendations on dismissal, reason-to-believe determinations, and probable-cause findings, as well as Statements of Reasons issued by Commissioners. *Id.*

FECA permits a complainant to challenge the FEC's handling of its complaint in two limited situations. 52 U.S.C. § 30109(a)(8)(A). If the Commission fails to act on the complaint within 120 days of the complaint's filing or if, at any time the Commission dismisses the complaint, a complainant may file suit in the United States District Court for the District of Columbia to challenge the agency's inaction or dismissal. *Id.* If a court finds that the Commission's failure to act or dismissal is "contrary to law," it may direct the Commission "to conform with such declaration" within 30 days. *Id.* § 30109(a)(8)(C).

### B. Factual Background

Plaintiff Free Speech for People is a national non-partisan, non-profit organization that aims to "restore republican democracy to the people, including through legal advocacy concerning the law of campaign finance." Compl., ECF No. 1, ¶ 6. To advance its mission, Plaintiff uses research, litigation, and public advocacy to inform the public about political campaign financing by corporations and wealthy donors. *Id.* It also advocates for legal reform and oversight, and it uses information about campaign finance practices to further its efforts. *Id.*

In February 2018, Plaintiff filed a three-count administrative complaint with the FEC, alleging that American Media, Inc. ("AMI"), which owns and operates the National Enquirer, made a $150,000 payment to Karen McDougal for the purpose of influencing the 2016 presidential campaign and, in so doing, violated several FECA provisions. Notice of Filing, ECF No. 12,

Exhibit A, ECF No. 12-1, [hereinafter Admin. Compl.], ¶ 2. The initial complaint named Donald J. Trump for President, Inc. ("Trump Campaign") and AMI as respondents. *Id.* at 1. Count I alleged that the Trump Campaign failed to report the $150,000 payment as an in-kind contribution and a $150,000 expenditure, in violation of FECA's reporting requirements. *Id.* ¶¶ 31–34 (citing 52 U.S.C. §§ 30104(b)(3)(A) and (b)(5)(A)). Count II claimed that AMI made, and the Trump Campaign received, a corporate contribution, violating FECA's prohibition against corporate contributions to federal candidates. *Id.* ¶¶ 35–37 (citing 52 U.S.C. § 30118(a)). Count III asserted that AMI made, and the Trump Campaign received, a contribution in excess of the $2,700 contribution limit imposed by FECA. *Id.* ¶¶ 38–39 (citing 52 U.S.C. § 30116(a)(1)(A) and 11 C.F.R. § 110.1).

Plaintiff twice amended the administrative complaint, first in April 2018 and then again in July 2018. These amendments added facts gleaned from media stories. *See generally* Am. Admin. Compl., ECF No. 12-2; Second Am. Admin. Compl., ECF No. 12-3. Plaintiff's first amended administrative complaint, for instance, cited articles from the New York Times, the New Yorker, and the Wall Street Journal, *see* Am. Admin. Compl. at 4–8, which reported that the President of AMI, David Pecker, admitted paying McDougal $150,000 for the exclusive rights to her story; that the agreement was conditioned on McDougal not "bashing Trump and [AMI]"; and that the agreement was struck less than three months before the 2016 Presidential election, *see id.* at 5–6. Plaintiff's second amended administrative complaint cited New York Times reporting regarding the release of an audio file, recovered during FBI raids on Michael Cohen's office, apartment, and hotel, containing a recorded conversation between Cohen and President Trump regarding the payment from AMI to McDougal. Second Am. Admin. Compl. at 3. On that recording, the President purportedly can be heard discussing a plan to pay "David," reportedly a reference to

David Pecker of AMI. *Id.* The second amended administrative complaint added the President and Michael Cohen as respondents. *See id.* at 1.

Since Plaintiff amended its administrative complaint, many of the details regarding the transaction between AMI and McDougal have been confirmed in court filings made by the Department of Justice.[2] Specifically, as part of his plea entered in the Southern District of New York, *see* Letter from Robert Mueller, Special Counsel, to Guy Petrillo, Esq., and Amy Lester, Esq., Petrillo, Klein and Boxer LLP (Nov. 29, 2018) at 2,[3] Michael Cohen admitted that he "knowingly and willfully caused . . . [AMI] to make and advance a $150,000 payment to [McDougal], including through the promise of reimbursement, so as to ensure that [McDougal] did not publicize damaging allegations before the 2016 presidential election and thereby influence that election," Criminal Information, *United States v. Michael Cohen*, 18-cr-602, ECF No. 2 (S.D.N.Y Aug. 21, 2018) [hereinafter Cohen Information], ¶ 42.[4] In addition, AMI entered into a non-prosecution agreement, in which it admitted to paying "$150,000, in cooperation, consultation, and concert with, and at the request and suggestion of one or more members or agents of a candidate's 2016 presidential campaign, to ensure that a woman did not publicize damaging allegations about that candidate before the 2016 election and thereby influence that election." Letter from Robert Khuzami, Acting United States Attorney, to Charles Stillman, Esq. and James Mitchell, Esq., Ballard Spahr LLP (Sept. 20, 2018), Exhibit A [hereinafter AMI Agreement], ¶ 2.[5]

---

[2] The court takes judicial notice of the public filings relating to Michael Cohen and AMI described in this paragraph. *See Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (recognizing the court's "authority to judicially notice related proceedings in other courts").
[3] Available at https://www.justice.gov/file/1115566/download.
[4] Available at https://www.justice.gov/usao-sdny/press-release/file/1088966/download.
[5] Available at https://www.justice.gov/usao-sdny/press-release/file/1119501/download.

### C. Procedural History

On June 13, 2019, Plaintiff brought this action, alleging that the FEC violated FECA by failing to act within 120 days on its initial and amended administrative complaints. Compl. ¶¶ 2–3. Plaintiff claims that it "is frustrated in carrying out its mission when outside political spending or a campaign's involvement in facilitating such spending is concealed, and when the FEC fails to enforce FECA's requirements for disclosing that spending." *Id.* ¶ 6. More specifically, Plaintiff asserts that it "lacks essential information about the financing of the 2016 election as a result of the FEC's failure to act." *Id.*

> For example, while many facts suggest that Mr. Cohen acted as an agent of the Trump Campaign and in consultation with Mr. Trump himself in facilitating the payment from AMI to Ms. McDougal, spokespeople and counsel for the Trump Campaign and Mr. Trump have repeatedly denied contemporaneous knowledge of, or involvement with, that payment.

*Id.* ¶ 23. Plaintiff asks the court to declare unlawful the FEC's failure to act and to order the agency to "conform with this declaration within 30 days." *Id.* at 8.

The Commission moves to dismiss, asserting that Plaintiff lacks a concrete informational injury—the only type of injury Plaintiff claims—sufficient to establish Article III standing. *See* Def.'s Mot. to Dismiss, ECF No. 7 [hereinafter Def.'s Mot.]. In the Commission's view, Plaintiff has not suffered an informational injury because (1) Plaintiff's administrative complaint seeks a legal determination rather than information whose disclosure is compelled by FECA, Def.'s Mot. at 15–17; (2) Plaintiff has not alleged any particularized harm, Def.'s Reply in Supp. of its Mot. to Dismiss, ECF No. 11 [hereinafter Def.'s Reply], at 3–7; and (3) Plaintiff has fallen short of establishing that it has suffered the requisite programmatic harm to invoke the

informational standing doctrine, Def.'s Mot. at 20–22.[6] Plaintiff disagrees. In its view, the Commission's inaction has deprived it of information to which it is entitled under FECA, thereby subjecting it to an informational injury sufficient to confer standing. *See* Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss, ECF No. 10 [hereinafter Pl.'s Mot.], at 2.

### III. LEGAL STANDARD

"The plaintiff bears the burden of invoking the court's subject matter jurisdiction, including establishing the elements of standing." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Thus, a plaintiff must show that she meets the "irreducible constitutional minimum" of Article III standing: (1) injury in fact, (2) causation, and (3) redressability. *Lujan*, 504 U.S. at 560–61. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id*. at 560 (quotation marks and internal citations omitted).

To establish standing at the motion to dismiss stage, "a plaintiff is required only to state plausibly that each standing element exists." *Jeffries v. Volume Servs. America, Inc.*, 928 F.3d 1059, 1063 (D.C. Cir. 2019). "Nevertheless, threadbare recitals of the elements of standing, supported by mere conclusory statements, do not suffice." *Arpaio*, 797 F.3d at 19 (cleaned up). The court neither assumes the truth of legal conclusions nor accepts unsupported inferences. *Id.* Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [of standing] that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When deciding whether to grant a motion to dismiss for lack

---

[6] The FEC also argues that Plaintiff's APA claim is foreclosed because FECA provides the exclusive vehicle for judicial review of the FEC's handling of administrative complaints. *Id.* at 22–26. Plaintiff offers no response to this argument. The court need not reach this argument, however, as it dismisses the case for lack of standing.

8

of jurisdiction, the court "may consider materials outside the pleadings." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## IV. DISCUSSION

In *FEC v. Akins*, the Supreme Court held that a plaintiff suffers a concrete injury, and thus may establish standing, from the "fail[ure] to obtain information which must be publicly disclosed pursuant to a statute." 524 U.S. 11, 21 (1998); *see also Citizens for Responsibility & Ethics in Wash. v. Am. Action Network*, 410 F. Supp. 3d 1, 12 (D.D.C. 2019) (citing *Akins*, 524 U.S. at 24–25) ("The Supreme Court has long recognized that FECA creates an informational right—the right to know who is spending money to influence elections, how much they are spending, and when they are spending it."). In *Akins*, the Court found that a group of voters had standing to assert that FECA entitled them to information about the activities of a lobbying organization because they had an interest in evaluating candidates and outside groups. *See Akins*, 524 U.S. at 12, 24–25.

Not every unrequited demand for information from the FEC is sufficient to establish Article III standing, however. "[T]he nature of the information allegedly withheld is critical to the standing analysis." *Common Cause v. FEC*, 108 F.3d 413, 417 (D.C. Cir. 1997). Most significantly, the applicable disclosure statute delimits the informational injury. "Only if the statute grants a plaintiff a concrete interest in the information sought will he be able to assert an injury in fact." *Nader v. FEC*, 725 F.3d 226, 229 (D.C. Cir. 2013); *see also Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989) (holding that denying a plaintiff information to "the extent [the statute] allows constitutes a sufficiently distinct injury to provide standing to sue"); *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (stating that "the existence and scope of an injury for informational standing purposes is defined by Congress"). With respect to

a FECA claim, an injury is deemed sufficiently concrete only if the disclosure sought "is related to [the plaintiff's] informed participation in the political process." *Nader*, 725 F.3d at 230.

Additionally, a plaintiff does not suffer an adequate informational injury if his demand is for the Commission to "'get the bad guys,' rather than disclose information." *Common Cause*, 108 F.3d at 418. A plaintiff does not have a "justiciable interest in the enforcement of the law." *Id.* Thus, he cannot "establish injury in fact merely by alleging that he has been deprived of the knowledge as to whether a violation of the law has occurred." *Id.*; *see also Wertheimer v. FEC*, 268 F.3d 1070, 1074–75 (D.C. Cir. 2001) (rejecting standing for plaintiffs who "do not really seek additional facts but only the legal determination that certain transactions constitute coordinated expenditures").

Finally, a plaintiff cannot establish injury based on the desire to obtain publicly available information "from a different source." *Wertheimer*, 268 F.3d at 1075. If the information sought "would add only a trifle to the store of information about the transaction already publicly available," a plaintiff lacks standing. *Citizens for Responsibility & Ethics in Wash. v. FEC*, 475 F.3d 337, 340 (D.C. Cir. 2007).

In this case, Plaintiff asserts a deprivation of "information regarding the nature of the involvement of the Trump Campaign and/or Mr. Trump in AMI's payment," and posits that "[a]n FEC investigation and determination of Mr. Trump and the Trump Campaign's role in AMI's payment, through an investigative process . . . is essential to clarifying the nature of Mr. Trump's and/or the Trump Campaign's involvement." Compl. ¶ 24. Plaintiff's brief similarly states that "there are open factual questions as to whether Mr. Cohen's actions were (1) on behalf of the Trump Campaign, and/or (2) in consultation with Trump himself." Pl.'s Mot. at 8. Presumably, then, what Plaintiff wants to know is whether the Trump Campaign, acting through Michael Cohen

and possibly the President himself, coordinated with AMI to pay Karen McDougal. But in seeking such information, Plaintiff desires for the Commission to do no more than "get the bad guys"; that is, Plaintiff seeks a legal determination that the respondents engaged in a coordinated scheme to violate FECA. As Plaintiff has no "justiciable interest in the enforcement of the law," *Common Cause*, 108 F.3d at 418, such claimed informational injury is insufficient to confer standing.

This conclusion is underscored by Plaintiff's failure to concretely identify what new disclosures FECA would require if its coordination theory is proven true. Indeed, as to the President and Michael Cohen, Plaintiff identifies no statutorily required disclosure that either should have made under FECA. And, as to AMI and the Trump Campaign, the relevant facts are already available. AMI has publicly admitted that it made the $150,000 payment to McDougal in order to influence the 2016 presidential campaign. *See generally* AMI Agreement; *see also* Sarah Ellison and Paul Farhi, *Publisher of the National Enquirer admits to hush-money payments made on Trump's behalf*, WASH. POST (Dec. 12, 2018). Plaintiff therefore knows (1) that an in-kind contribution took place, (2) the source of the contribution, (3) the amount of the contribution, (4) the purpose of the contribution, and (5) the date of the contribution. FECA requires no further disclosures about the payment to McDougal.

Yet there is more. Based on Michael Cohen's guilty plea, it is publicly known that "one or more members of the [Trump Campaign]" coordinated with Michael Cohen and AMI to snuff out negative stories about then-candidate Trump's relationships with women. Cohen Information ¶ 27. To be sure, the Information in Michael Cohen's case does not affirmatively state that the Trump Campaign knew of the specific payment to McDougal, and apparently the Trump Campaign continues to deny knowledge of the payment. But, even if an investigation were to show that the Trump Campaign was aware of the payment and should have disclosed it, Plaintiff

11

already is aware from AMI's admissions everything FECA entitles it to know. Plaintiff cannot establish standing by desiring that same information "from a different source." *Wertheimer*, 268 F.3d at 1075.

*Wertheimer v. FEC* is nearly on all fours with the present case. There, the D.C. Circuit considered whether two organizations had standing to seek enforcement of an administrative complaint aimed at establishing whether expenditures by political parties that further the election of their respective candidates and are coordinated by those candidates constitute disclosable contributions and expenditures. *Wertheimer*, 268 F.3d at 1071. During oral argument in that case, counsel for the plaintiffs explained that the "fact" of "coordination" was what was being unlawfully withheld, thereby conferring informational standing. *Id.* at 1074–75. The D.C. Circuit found this to be insufficient for standing purposes. It held that, while "[i]t is perhaps conceivable that certain facts are necessarily implied by the label 'coordinated,'" plaintiffs did "not really seek additional facts but only the legal determination that certain transactions constitute coordinated expenditures." *Id.* at 1075. Accordingly, the court concluded, the plaintiffs "only seek the same information from a different source. Any such increase in information resulting from the imposition of duplicative reporting requirements seems trivial." *Id.*

So, too, here. Plaintiff asserted at oral argument that "we simply do not know all of the facts behind the payments to Ms. McDougal," Hr'g Tr., ECF No. 13, at 17, including whether the Trump Campaign "was aware of and/or had approved of the contribution," *id.* at 33. Plaintiff's effort to frame a legal determination (whether an in-kind contribution took place) as a factual one (whether the Trump Campaign was aware of or approved the payment) does not establish standing. The "fact" of "awareness" or "approval" by the Trump Campaign in this case is no different from the "fact" of "coordination" held insufficient for standing purposes in *Wertheimer*. And, while

12

Plaintiff attempts to distinguish this case from *Wertheimer* by emphasizing that President Trump and the Trump Campaign have disputed their involvement in AMI's payment, *see e.g.*, Pl.'s Mot. at 8–9; Compl. ¶ 23, that is not a material distinction. Like the plaintiffs in *Wertheimer*, Plaintiff already knows the information that FECA requires be disclosed regarding the McDougal payment; Plaintiff simply wants the same information from a different source—an FEC investigation and a finding of an election law violation. Such a desire does not support an informational injury. *See also Judicial Watch, Inc. v. FEC*, 293 F. Supp. 2d 41, 47 (D.D.C. 2003) (holding that the plaintiff had not suffered an informational injury where he sought an FEC investigation into his own contributions to a campaign because the plaintiff was "already aware of the facts underlying" the contributions, and his administrative complaint would not "yield additional facts" about the campaign's alleged reported violations of which he was not already aware).

*Campaign Legal Center v. FEC* ("*CLC*"), on which Plaintiff chiefly relies, actually cuts against Plaintiff and is otherwise easily distinguishable. There, the court held that two organizational plaintiffs had standing as to three of five administrative complaints they had filed, each of which the Commission had dismissed without an investigation. 245 F. Supp. 3d 119, 125–26 (D.D.C. 2017). As to the first two complaints, which concerned the true source of contributions to presidential candidate Mitt Romney's super PAC, the court found that the plaintiffs lacked standing because the individual sources of those contributions had admitted to making the contributions and the contributions had been publicly reported. *Id.* Such is the case here. AMI has "readily acknowledged," *id.* at 126, making the payment to McDougal in order to influence the election, *see* AMI Agreement; Ellison, supra. As to the other three administrative complaints, the court in *CLC* found that the plaintiffs did have informational standing because the true source of the contributions at issue remained in doubt. *CLC*, 245 F. Supp. 3d at 127. Although media

13

reports had linked one individual to the contributions, no "conclusive proof" appeared to settle the question whether other unknown individuals were also involved. *Id.* This yet unresolved fact, the *CLC* court held, conferred an informational injury on the plaintiffs. *Id.* This case is different. Plaintiff does not demand to learn the existence of an unidentified "true source" or something similar; Plaintiff is aware of all the players in the transaction at issue. Rather, what it seeks is a legal determination whether the Trump Campaign violated FECA by failing to disclose an illegal in-kind contribution, and a factual finding as to whether the President knew about the payment. Thus, unlike the *CLC* plaintiffs, Plaintiff does not seek any presently unknown information that is otherwise subject to disclosure under FECA. It therefore lacks standing to sue.

## V. CONCLUSION

For the foregoing reasons, the court grants the Commission's Motion to Dismiss, ECF No. 7, and dismisses this action with prejudice. A separate final, appealable order accompanies this Memorandum Opinion.

Dated: March 2, 2020

Amit P. Mehta
United States District Court Judge